**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**JONATHAN M. ISOM** **PLAINTIFF**

**V.** **CIVIL ACTION NO. 2:16-CV-109-KS-MTP**

**VALLEY FORGE INSURANCE COMPANY,**
**TRANSPORTATION INSURANCE COMPANY,**
**CNA FINANCIAL CORPORATION, and**
**GATHING INSURANCE SERVICES, LLC** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion to Strike Rebekah Ratliff ("Motion to Strike Ratliff") [85], Motion to Strike Dennis Caniglia ("Motion to Strike Caniglia") [87], and Motion for Summary Judgment [82] filed by Defendants Valley Forge Insurance Company ("Valley Forge") and Transportation Insurance Company ("Transportation") (collectively "Insurers"), the Motion for Summary Judgment [89] filed by Defendant Gathings Insurance Services, LLC ("Gathings",)[1] and the Motion for Partial Summary Judgment [91] filed by Plaintiff Jonathan M. Isom ("Plaintiff"). After considering the submissions of the parties, the record, and the applicable law, the Court finds the following:

1. the Motion to Strike Ratliff [85] is well taken and should be granted;
2. the Motion to Strike Caniglia [87] is well taken and should be granted;
3. Insurers' Motion for Summery Judgment [82] is well taken and should be granted;
4. Gathings' Motion for Summary Judgment [89] is well taken and should be granted; and

---

[1]Incorrectly labeled "Gathering Insurance Services, LLC" by Plaintiff.

5. Plaintiff's Motion for Partial Summary Judgment [91] is not well taken and should be denied.

## I. BACKGROUND

On January 4, 2016, Plaintiff filed this action in the Circuit Court of the First Judicial District of Hinds County, Mississippi. On February 3, 2016, Insurers removed the action to this Court before Gathings was served with process. Gathing was served on April 15, 2016. On July 18, 2016, CNA Financial Corporation was dismissed from the case for failure to serve process.

This action centers around a lawsuit filed in this court on December 23, 2013, styled *Isom v. Premier Orthopedic & Sports Medicine, et al.*, Civil Action No. 2:13-CV-278-KS-MTP (the "Underlying Suit"). In the Underlying Suit, Plaintiff brought racial discrimination claims against Premier Orthopedic & Sports Medicine ("Premier") and Dr. Thomas B. Baylis ("Baylis"), the CEO of Premier. In the Underlying Complaint [82-1], Plaintiff claimed that Premier and Baylis discriminated against him based on race in violation of Title VII through Baylis' refusal to work with him when they were both on staff at Wesley Medical Center ("Wesley"). Premier and Baylis made a claim to Insurers, with whom they had insurance policies providing Employment Practices Liability Coverage and the Businessowners Liability Coverage. These policies were procured by Premier and Baylis through Gathings. Insurers ultimately found that they were not obligated to defend or indemnify under these policies, as the claims brought by Plaintiff were not covered under the policy language.

In September 2015, a Judgment by Consent [1-4] was entered in the Underlying Suit in the amount of $4,000,000, and parties entered into a Covenant Not to Execute and/or Enroll Judgment and Assignment [1-3], through which Plaintiff agreed not to execute the judgment against Premier

or Baylis, and Premier and Baylis assigned all of their claims against Insurers in connection to the Underlying Suit to Plaintiff.

## II. MOTIONS TO STRIKE [85][87]

In their Motion to Strike Ratliff [85] and their Motion to Strike Caniglia [87], Insurers argue that the opinions of Rebekah Ratliff ("Ratliff") and Dennis Caniglia ("Caniglia") are inadmissible legal conclusions because they impermissibly analyze coverage under the policies and opine as to whether Insurers acted in bad faith.

Although Federal Rule of Evidence 704(a) does permit expert opinion testimony to embrace an ultimate issue, it "does not allow a witness to give legal conclusions." *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999) (citing *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)). The Fifth Circuit has held that the interpretation of policy coverage and the determination of whether an insurer acted in bad faith are questions of law that the court must decide. *See Broussard v. State Farm Fire Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (quoting *U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992) (holding that whether an insurer acted in bad faith "is an issue of law for the court"); *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096 n.5 (5th Cir. 1995) (stating that, because interpretation of contract is a question of law, any reliance on expert testimony opining on coverage under an insurance policy was misplaced). The only relevant opinions[2] given by Ratliff is that Insurers "improperly disclaimed coverage and acted in bad faith." (Ratliff Report [85-1] at p. 14.) The only opinion given by Caniglia is that "there are at least two areas where coverage exist" under the policies. (Caniglia Report [87-1] at p. 5.) Because these

[2]She also gives an opinion as to the bad faith of CNA Financial Corporation, who has been dismissed from this case for failure to serve process.

opinions address issues which are questions of law, they are legal conclusions and must be excluded. Therefore, the Motion to Strike Ratliff [85] and the Motion to Strike Caniglia [87] will be **granted**.

## III. MOTIONS FOR SUMMARY JUDGMENT [82][89][91]

### A. Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744

(5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

**B. Insurers' Motion for Summary Judgment [82]**

Plaintiff brings a claim of breach of contract against Insurers for breaching their duty to defend and indemnify under the policies and a claim of breach implied covenant of good faith and fair dealing based on this breach. Insurers contend that they are entitled to summary judgment as to these claims. They argue there was no breach of contract because the claims in the underlying suit were not covered by any policy issued by them, and that, because there was no breach of contract, there can be no breach of implied covenant of good faith and fair dealing.

Insurers issued two types of coverage to Premier relevant to this suit,[3] the Employment Practices Liability Coverage and the Businessowners Liability Coverage.[4] Plaintiff argues that Insurers had a duty to defend and indemnify Premier and Baylis under both of these coverages.

**1. Employment Practices Liability Coverage**

The Employment Practices Liability Coverage covered employment claims brought "by or on behalf of a natural person who is an 'employee' or applicant for employment." (Valley Forge Policy [82-2] at p. 126; Transportation Policy [82-3] at p. 127.) An employee is defined by both

[3]Valley Forge initially issued them for the policy period of December 5, 2011, through December 5, 2012, and Transportation renewed them for the policy period of December 5, 2012, through December 5, 2013.

[4]The umbrella coverage referenced by Plaintiff was issued by Continental Casualty Company, who is not a defendant in this case. (*See* Continental Umbrella Policy [82-8].)

policies to be "all of the [insured's] past, present or future full-time or part-time employees, including seasonal and temporary employees and employees leased or loaned to you" but specifically excludes independent contractors. (Valley Forge Policy [82-2] at p. 126; Transportation Policy [82-3] at p. 127.)

In the Underlying Complaint [82-1], Plaintiff never alleges that he was an employee of Premier or Baylis and never alleges that he was leased or loaned to them as an employee. Rather, he states that he is a "contract employee" of Wesley and was "assigned" by Wesley to provide anesthesiology services for procedures done at Wesley by Baylis, who was also on staff there. (*See* Underlying Complaint [82-1] at p. 3.) Nothing in the Underlying Complaint [82-1] suggests that Premier or Baylis employed Plaintiff or that Wesley formally loaned him to them. From the face of the Underlying Complaint [82-1], it appears that Plaintiff and Baylis were both staff physicians at Wesley and were merely assigned to work together. Furthermore, after Insurers investigated the claim under the Employment Practices Liability Coverage and determined there was no coverage, Premier and Baylis verified that Plaintiff was never an employee.[5] (*See* Claim Excerpts [106-6] at p. 59.) Additionally, Plaintiff himself has admitted in the course of the current litigation that he is not nor has he ever been an employee of Premier or Baylis. (*See* Admissions to Gathing [82-5] at p. 3; Admissions to Insurers [82-4] at p. 3.)

Because it is indisputable that Plaintiff was never employed by Premier or Baylis, Insurers properly denied Premier and Baylis' claim under the Employment Practices Liability Coverage.

### 2. Businessowners Liability Coverage

---

[5]Prior to their investigation, Insurers had been under the impression that Plaintiff was an employee of Premier and Baylis.

Plaintiff argues that coverage existed under the Businessowners Liability Coverage because it covered claims of slander and false light invasion of privacy, both of which he contends were brought by the factual allegations in the Underlying Complaint [82-1] even though they were not specifically pleaded.[6] This contention is based on one sentence of the Underlying Complaint [82-1], which alleges that Baylis "on one occasion made a flagrantly derogatory comment to DR. ISOM which was witnessed by several members of the surgical staff." The Court is unsure how the Insurers were meant to connect this sentence with slander or false light invasion of privacy, neither of which were specifically pleaded, when there are no allegations in the Underlying Complaint [82-1] that the comment was a false statement, that it would be "highly offensive to a reasonable person," or that it satisfied any other element of either of the claims. *See Bros. v. Winstead*, 129 So.3d 906, 928 (Miss. 2014) (outlining the elements of slander); *Cook v. Mardi Gras Casino Corp.*, 697 So.2d 378, 382 (Miss. 1997) (defining false light invasion of privacy). In fact, Insurers investigated this comment before denying coverage and found that it involved Baylis calling Plaintiff "a piece of s***." (Claim Excerpts [106-7] at p. 10.) This type of comment does not amount to slander or false light invasion of privacy because it does not "convey any factual assertion, but is rather 'the sort of loose, figurative or hyperbolic which would negate the impression' that a factual statement was being made."[7] *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S. Ct. 2695, 111

---

[6]Under Mississippi law, the duty to defend extends to those instances where the insurer is "presented with extrinsic facts, of which the insurer has knowledge or could obtain knowledge by means of a reasonable investigation, that trigger coverage under the policy" *Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 14, 418 (5th Cir. 2008) (citations omitted).

[7]The Court need not decide whether these claims were properly excluded from coverage as "intentional acts" because these claims were not brought in the Underlying Suit.

L.Ed.2d 1 (1990)). The only claims brought in the Underlying Complaint [82-1], even accounting for all claims not explicitly stated and which could be inferred from the factual allegations, were employment discrimination claims. Therefore, coverage was properly denied under the Businessowners Liability Coverage of the policies.

Because no coverage for the claims in the Underlying Complaint [82-1] existed under either the Employment Practices Liability Coverage or the Businessowners Liability Coverage, Insurers did not breach the terms of the policies by not defending or indemnifying Premier or Baylis. Insurers' Motion for Summary Judgment [82] must therefore be **granted** as to Plaintiff's breach of contract claim, and it will be **dismissed with prejudice**.

Furthermore, because the only other claim against Insurers, the breach of implied good faith and fair dealing, is premised on a breach of contract, the Motion for Summary Judgment [82] will be **granted** as to it as well, and it will also be **dismissed with prejudice**. *See Daniels v. Parker & Assocs., Inc.*, 99 So.3d 797, 801 (Miss. Ct. App. 2012) ("[T]o have a breach of the duty of implied good faith and fair dealing there must first be an existing contract and then a breach of that contract.").

**C. Gathings' Motion for Summary Judgment [89]**

In the event that the Court finds that the policies do not cover the claims in the Underlying Suit, which it does, Plaintiff brings a claim of negligence against Gathings for failure to procure coverage.[8] Under Mississippi law, if a reading of the insurance policy would make it clear that a denied claim was not covered, and if the plaintiff had fair notice of the policy terms, an insurance

[8]It is disputed as to whether Premier and Baylis' assignment actually covered claims against Gathings. However, since the negligent procurement claim necessarily fails as a matter of law regardless, the Court need not address this issue.

agent is not liable for a negligent failure to procure claim. *See Mladineo v. Schmidt*, 52 So.3d 1154, 1164 (Miss. 2010). This is true even if the insurance agent *did* breach his duty to procure the requested coverage. *Id.* Furthermore, the Mississippi Supreme Court has held that the policy itself constitutes notice of its included terms and that silent acceptance of an insurance policy binds the insured to the clear policy terms. *Id.* (quoting *Rosenstock v. Miss. Home Ins. Co.*, 35 So. 309, 311 (1903)).

Here, the only claims brought in the Underlying Complaint [82-1] were employment discrimination claims brought by a non-employee, and the policies clearly do not cover any type of employment claims brought by non-employees. (*See* Valley Forge Policy [82-2] at p. 126; Transportation Policy [82-3] at p. 127.) Therefore, because the language is clear that the Employment Practices Liability Coverage only covers claims brought by employees as defined therein and because the policies constituted notice of these terms, Gathings cannot be liable for a negligent procurement claim.

Plaintiff attempts to argue that the rule from *Mladineo* does not apply, quoting language from that case stating that, while plaintiffs were "barred from arguing that they did not know what was in the policy," the court did not say that they were "barred from arguing that [the insurance agent's] alleged negligence caused them to underestimate the coverage they would need." 52 So.3d at 1163. However, Plaintiff has presented no evidence that Gathings caused Premier and Baylis to underestimate the coverage they needed. In fact, Baylis stated in his affidavit that he requested and understood that he was getting full coverage for his business and made no statement concerning any underestimation of needed coverage. (*See* Baylis Affidavit [91-8].) A reading of the policies would have shown that employment claims brought by non-employees were not covered. As such, Baylis is barred from arguing he did not know of this limitation to the coverage.

Therefore, as Premier and Baylis had notice that employment claims by non-employees were not covered by the policies, Gathings' Motion for Summary Judgment [89] must be **granted**, and the claim against it **dismissed with prejudice**.

**D. Plaintiff's Motion for Partial Summary Judgment [91]**

Plaintiff's Motion for Partial Summary Judgment [91] asks the Court to grant him summary judgment on the issue of Insurers' duty to defend under the applicable policies. As the Court has already determined that the claims of the Underlying Suit were not covered by Insurers' policies and that there was consequently no duty to defend, *see supra* III.B, this motion will be **denied**.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Strike Ratliff [85] is **granted**.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion to Strike Caniglia [87] is **granted**.

IT IS FURTHER ORDERED AND ADJUDGED that Insurers' Motion for Summary Judgment [82] is **granted**. Plaintiff's claims against Insurers will be **dismissed with prejudice**.

IT IS FURTHER ORDERED AND ADJUDGED that Gathings' Motion for Summary Judgment [89] is **granted**. Plaintiff's claim against Gathings will be **dismissed with prejudice**.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion for Partial Summary Judgment [91] is **denied**.

SO ORDERED AND ADJUDGED this the 13th day of December, 2016.

s/Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE